UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
JODY FABRIKANT & RUSSELL A.
SCHINDLER,

      Plaintiffs,

  -v-              1:03-CV-1289-DNH-DRH

CHRISTINE FRENCH; WILLIAM
DERIDDER; HECTOR L. MEJIAS, JR.;
JOHN SPINATO; CATHERINE PALMER-
WEMP; WALTER SASSE; CHRISTINA
KHULY; DAVID STARK; DIANE STARK;
ULSTER COUNTY SOCIETY FOR THE
PREVENTION OF CRUELTY TO
ANIMALS; BRADLEY KNEE; AVERY
SMITH; & LARAINE CALIRI,

      Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:         OF COUNSEL:

LUIBRAND LAW FIRM, PLLC    KEVIN A. LUIBRAND, ESQ.
Attorneys for Plaintiff Fabrikant
950 New Loudon Road, Suite 270
Latham, New York 12110

LAW OFFICE OF RUSSELL A. SCHINDLER RUSSELL A. SCHINDLER, ESQ.
Attorneys for Plaintiff Schindler    Appearing Pro Se
245 Wall Street
Kingston, New York 12401

YOUNG, SOMMER, WARD, RITZENBERG, JAMES A. MUSCATO II, ESQ.
BAKER & MOORE, LLC       SUE H.R. ADLER, ESQ.
Attorneys for Defendants      DEAN S. SOMMER, ESQ.
Executive Woods
Five Palisades Drive
Albany, New York 12205

DAVID N. HURD
United States District Judge

## **MEMORANDUM-DECISION and ORDER**

### I. INTRODUCTION

Plaintiffs Jody Fabrikant and Russell A. Schindler, Esq., *pro se*, filed their second amended complaint following the reinstatement of their claims pursuant to the mandate of the Second Circuit Court of Appeals, see Schindler v. French, 232 F. App'x 17, 19-20 (2d Cir. 2007). Fabrikant asserts, *inter alia*, that her federal constitutional rights were violated during the course of her criminal prosecution for animal cruelty, including her right to be free from malicious prosecution (Causes of Action Two and Four), her right to due process (Cause of Action Five), her right to a presumption of innocence (Cause of Action Six), her right to counsel (Cause of Action Eight), her right to free speech (Cause of Action Nine), and her right to be free from unreasonable searches and seizures (Cause of Action Ten). She also asserts pendent state law claims (Causes of Action One, Three, Eleven, Twelve, Thirteen, and Fourteen). Finally, Fabrikant and Schindler jointly assert a state law claim for libel (Cause of Action Seven).

Defendants Christine French, William DeRidder, Hector L. Mejias, Jr., John Spinato, Catherine Palmer-Wemp, Walter Sasse, Christina Khuly, David Stark, Diane Stark, Ulster County Society for the Prevention of Cruelty to Animals ("UCSPCA"), Bradley Knee, Avery Smith, and Larine Caliri (collectively "defendants") move for summary judgment of all claims pursuant to Federal Rule of Civil Procedure 56. Both plaintiffs oppose, but Fabrikant withdraws her claims for the alleged violation of her right to a presumption of innocence and legal counsel. (Pl. Fabrikant's Opp'n Mem. of Law, Dkt. No. 178, 25.) Accordingly, Causes of Action Six and Eight are not at issue and will be dismissed. Defendants' summary judgment motion was considered without oral argument.

## II. **BACKGROUND**

This lawsuit arises from the investigation and subsequent criminal prosecution of Fabrikant (hereinafter "plaintiff") for alleged animal cruelty in violation of Section 353 of New York's Agriculture and Markets Law.  In or around February 2002, plaintiff was in possession of fifteen animals, including one Rottweiler, two Cocker Spaniels, one Chow, one Basenji mix, nine Basenji/Great Pyrenees puppies, and one cat.  Complaints about the animals' treatment were made to law enforcement authorities and defendant UCSPCA after several people, including defendants Khuly, David Stark, and Diane Stark, visited plaintiff's home in response to an advertisement placing the puppies for adoption.

In their capacities as UCSPCA Investigators, defendants Spinato and Sasse visited plaintiff's home to assess the validity of the complaints of animal cruelty.  Having received several reports and made their own personal observations of the animals at plaintiff's home, they applied for a search warrant to seize the animals.  The warrant was issued on March 1, 2002 and authorized the seizure of the nine puppies, the Rottweiler, the Chow, and any other evidence of animal cruelty found within the residence.  Defendants Spinato, Sasse, DeRidder, and Palmer-Wemp executed the search warrant on March 2, 2002.  As UCSPCA's Operations Manager and Veterinary Technician, respectively, defendants DeRidder and Palmer-Wemp were responsible for removing the animals from plaintiff's home and evaluating their overall health.

Defendant Spinato arrested plaintiff during the execution of the warrant while defendants DeRidder and Palmer-Wemp seized the nine puppies, the Chow, the Rottweiler, one of the Cocker Spaniels, and the cat.  Two of the remaining dogs were not seized because they appeared in adequate condition.  After the house was secured, plaintiff was

arraigned on animal cruelty charges, and the seized animals were taken to the UCSPCA for evaluation and medical treatment.

On March 6, 2002, a state court order was issued directing that the animals be allowed to remain at plaintiff's home during the pendency of the criminal charges. (See Ex. E to Pl. Fabrikant's Aff., Dkt. No. 179-6.) Notwithstanding the order, the seized animals remained in the care of the UCSPCA. During that time, UCSPCA's Executive Director, defendant French, sought foster homes for the nine puppies and the cat. She also ordered that the animals be spayed and neutered pursuant to UCSPCA's policy for animals leaving the shelter. While in foster care, one of the hind claws of one of the dogs was surgically removed due to an alleged infection.

Plaintiff was represented by her co-plaintiff, Mr. Schindler, during her criminal case. She appeared in court on March 6 and 13, 2002 for pre-trial proceedings related to the criminal accusatory instruments. On March 26, 2002, she moved to dismiss the charges against her based upon alleged prosecutorial misconduct and the violation of her right to due process. The motion to dismiss was denied on May 2, 2002. She next appeared in court on October 24, 2002, at which time the prosecution orally moved to dismiss the charge of animal cruelty related to the Rottweiler. The judge agreed to dismiss the charge in the interest of justice, but the four other animal cruelty charges remained. Plaintiff's trial on those charges began on October 24, 2002; however, a mistrial was ordered on October 29, 2002 following prejudicial statements made during Mr. Schindler's opening statement. (See Order of Mistrial, Ex. U to Adler Dec., Dkt. No. 169-32, 2.)

Following the mistrial, plaintiff moved to dismiss all charges in the interest of justice on April 10, 2003 based upon alleged misconduct by law enforcement and UCSPCA

personnel. A hearing was held on May 13, 2003 before a new presiding judge, Rochester Town Justice Ronald W. Keillor, Jr. A separate hearing was later held on May 27, 2003 in connection with plaintiff's suppression motion. Although plaintiff's motions were denied, she was acquitted after a second jury trial conducted on October 10 and 11, 2003.

## III. **DISCUSSION**

Summary judgment is warranted when the pleadings, depositions, answers to interrogatories, admissions, and affidavits reveal no genuine issue as to any material fact. FED. R. CIV. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986). All facts, inferences, and ambiguities must be viewed in a light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986); Mandell v. County of Suffolk, 316 F.3d 368, 377 (2d Cir. 2003). Initially, the burden is on the moving party to demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2458 (1986). After the moving party has satisfied its burden, the non-moving party must assert specific facts demonstrating there is a genuine issue to be decided at trial. FED. R. CIV. P. 56; Liberty Lobby, Inc., 450 U.S. at 250, 106 S. Ct. at 2511. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S. Ct. at 1356. There must be sufficient evidence upon which a reasonable fact finder could return a verdict for the non-moving party. Liberty Lobby, Inc., 477 U.S. at 248-49, 106 S. Ct. at 2510; Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356.

### A. Plaintiff's Federal Claims Pursuant to 42 U.S.C. § 1983

Plaintiff asserts one or more federal claims against each of the defendants pursuant to 42 U.S.C. § 1983 ("§ 1983") (Causes of Action Two, Four, Five, Nine, and Ten). In order to establish a constitutional claim under § 1983, plaintiff must show that the defendants were acting under color of state law at the time of the alleged violation and that the action was a deprivation of a constitutional or federal right. Washington v. County of Rockland, 373 F.3d 310, 315 (2d Cir. 2004) (citing Hayut v. State Univ. of N.Y., 352 F.3d 733, 743-44 (2d Cir. 2003)). A defendant's "misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of state law.'" United States v. Classic, 313 U.S. 299, 326, 61 S. Ct. 1031, 1043 (1941) (citations omitted).

#### 1. Malicious Prosecution Claims

Plaintiff asserts federal claims for malicious prosecution in Causes of Action Two and Four against defendants Spinato, Khuly, Sasse, Diane Stark, Caliri, Smith, and Knee. In order to demonstrate a violation of her right to be free from malicious prosecution, she must raise an issue of fact as to five separate elements:

> (1) that the defendant initiated a prosecution against the plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with malice, [ ] (4) that the prosecution was terminated in the plaintiff's favor . . . [and] that there was (5) a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights.

Rohman v. New York City Transit Auth., 215 F.3d 208, 215 (2d Cir. 2000) (citations omitted).[1]

---

[1] In New York, a state law claim for malicious prosecution will survive summary judgment so long as there is proof of the same first four elements as for a federal claim under § 1983; that is, the elements are the same under New York law but for the requirement for federal claims that a plaintiff suffered a post-
(continued...)

With respect to the first element, defendants Spinato and Sasse concede that they initiated a criminal prosecution against plaintiff due to their roles as authorized peace officers for defendant UCSPCA.  In contrast, defendants Khuly, Diane Stark, Caliri, Smith, and Knee argue that there is no issue of fact as to whether they commenced the criminal prosecution against plaintiff because their involvement is undisputably limited to reporting their observations to law enforcement and UCSPCA personnel.  Although civilians who provide law enforcement with information in good faith will generally not be considered to have commenced a criminal prosecution, see Weintraub v. Bd. of Educ. of City of New York, 423 F. Supp. 2d 38, 55 (E.D.N.Y. 2006); Du Chateau v. Metro-North Commuter R.R. Co., 253 A.D.2d 128, 131 688 N.Y.S.2d 12, 15 (N.Y. App. Div. 1st Dep't 1999), a citizen will nonetheless be deemed to have initiated criminal proceedings against a suspect if he or she instigated the arrest by being particularly insistent, or in some cases, providing false information to police.  See Weintraub, 423 F. Supp. 2d at 55-56; Fowler v. Robinson, No. 94-CV-836, 1996 WL 67994, at *6 (N.D.N.Y. Feb. 15, 1996) (McAvoy, C.J.).

Plaintiff disputes the veracity of the reports made by defendants and alleges that they instigated her arrest by providing false statements to law enforcement.  By virtue of her co-habitation with the animals, plaintiff has personal knowledge of the conditions of the animals' treatment.  Accordingly, she may rely upon her own statements to raise an issue of fact as to whether the defendants misled the police and the UCSPCA about her behavior.  Whether defendants Khuly, Diane Stark, Caliri, Smith, and Knee in fact lied would require a

---

[1](...continued)
arraignment liberty restraint.  See Rohman, 215 F.3d at 215 (citing Posr v. Court Officer Shield # 207, 180 F.3d 409, 417 (2d Cir. 1999)).

factfinder to make several credibility determinations as between the defendants and plaintiff. Therefore, plaintiff has satisfied the first element of her malicious prosecution claims because she has raised an issue of fact which, if true, would tend to show that the defendants made false statements to law enforcement and UCSPCA personnel in an effort to encourage plaintiff's prosecution.

The second element of a malicious prosecution claim proves more difficult for plaintiff in light of the video recording and photographs taken of her home during the execution of the search warrant on March 2, 2002.  (See Ex. K to Sasse Decl.; Ex. L to Sasse Decl.)  The existence of probable cause will defeat a malicious prosecution claim. Dickerson v. Napolitano, 604 F.3d 732, 751 (2d Cir. 2010) (citing Jaegly v. Couch, 439 F.3d 149, 152 (2d Cir. 2006); Burns v. City of N.Y., 17 A.D.3d 305, 305, 791 N.Y.S.2d 851, 851 (2d Dep't 2005)).  Probable cause exists when there is "'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution'" that a crime was committed.  Dickerson, 604 F.3d at 751 (quoting Jaegly, 439 F.3d at 152).  Section 353 of New York's Agricultural and Markets Law prohibits, in pertinent part, "any act of cruelty to any animal," including the deprivation of "necessary sustenance, food or drink" and other unjustifiable injury.  N.Y. AGRIC. & MKTS. LAW § 353.  The review of the video recording and photographs of plaintiff's home indicates that defendants had probable cause to believe that she had committed acts of cruelty based upon the condition of the animals' living quarters.  In particular, the evidence shows that piles of feces and open garbage bags were left throughout the residence.  Additionally, the animals were found locked in small crates, and at least two of the animals were locked together in a single crate making it difficult for either of them to move or lie down.  At a minimum, the video recording and

photographs indicated severely unhealthy living conditions for the animals. Taken together with the other accounts of abuse and plaintiff's own admission that she was having difficulty caring for the dogs, there was probable cause to believe she had committed animal cruelty. Therefore, defendant's motion as to Causes of Action Two and Four will be granted, and consideration of the remaining elements for plaintiff's malicious prosecution claims is unnecessary.

### 2. Due Process Claim

Plaintiff alleges defendants French, DeRidder, UCSPCA, Caliri, Knee, and Smith violated her right to due process when her animals were spayed, neutered, and/or amputated after being seized from her home (Cause of Action Five). As a preliminary matter, defendants contend they did not act under color of state law as required for a due process claim brought pursuant to § 1983.

A private entity such as the UCSPCA may be considered a state actor when:

> (1) the entity acts pursuant to the "coercive power" of the state or is "controlled" by the state ("the compulsion test"); (2) when the state provides "significant encouragement" to the entity, the entity is a "willful participant in joint activity with the state," or the entity's functions are "entwined" with state policies ("the joint action test" or "close nexus test"); or (3) when the entity "has been delegated a public function by the states," ("the public function test").

Sybalski v. Indep. Group Home Living Program, Inc., 546 F.3d 255, 257 (2d Cir. 2008) (alteration marks omitted) (quoting Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n, 531 U.S. 288, 296, 121 S. Ct. 924, 930 (2001) (citations and internal quotation marks omitted)). In Sybalski, the Second Circuit considered whether the corporate owner of a group home for mentally disabled adults and five employees of the corporate entity were state actors under either the joint action or public function tests. 546 F.3d at 258-59.

Ultimately, the court concluded the defendants were not state actors because the statutory regulations imposed upon the corporate entity did not circumvent the defendants' decision making authority, id. at 259, and there was insufficient evidence to conclude that care of the mentally disabled "was a function 'traditionally' and 'exclusively' reserved by the state." Id. at 260 (quoting Jackson v. Metro Edison Co., 419 U.S. 345, 352, 95 S. Ct. 449, 454 (1974)).

Plaintiff contends that the UCSPCA and its employees were state actors because they were vested with authority under state law. Undisputably, several state statutes provided the UCSPCA and its two investigators, defendants Spinato and Sasse, with the power to apply for a search warrant, seize animals, and make an arrest. For example, New York's Criminal Procedure Law provides that "[o]fficers or agents of a duly incorporated society for the prevention of cruelty to animals" are among the groups of persons who shall have the powers of "peace officers." N.Y. CRIM. PROC. LAW § 2.10(7). Further, the state's Agriculture and Markets Law authorizes, inter alia, any agent or officer of a duly incorporated society for the prevention of cruelty to animals to issue appearance tickets, make an arrest, or interfere to prevent any act of cruelty upon any animal. N.Y. AGRIC. & MKTS. LAW § 371. Similarly, New York's Not-for-Profit Corporation Law bestows "[s]pecial powers" onto a society for the prevention of cruelty to animals, including the filing of a criminal complaint and assisting in the presentation of evidence to tribunals. N.Y. NOT-FOR-PROFIT CORP. LAW § 1403(b)(2).

Although such statutes are relevant to the state actor analysis for claims arising from the execution of the search warrant and the filing of criminal charges, plaintiff's due process claim is based upon only the spaying, neutering, and/or amputation of her animals. (See Pl. Fabrikant's Second Am. Compl., Dkt. No. 85, ¶¶ 154-57.) Plaintiff has not come

forward with evidence suggesting that the medical attention administered by the UCSPCA and its employees, including the spaying, neutering, and/or amputation of plaintiff's animals from which Cause of Action Five arises, was authorized by state law.  To the contrary, the defendants performed the medical procedures in furtherance of the UCSPCA's objectives and under the UCSPCA's control rather than under some statutory delegation of authority. Accordingly, the conduct alleged in plaintiff's due process claim brought under § 1983 was not carried out under color of law, and defendants' motion for summary judgment of Cause of Action Five will be granted.

### 3. First Amendment Claim

Plaintiff also asserts under § 1983 that defendants French, DeRidder, Mejias, Spinato, Sasse, and UCSPCA retaliated against her in violation of her First Amendment right to free speech (Cause of Action Nine).  She alleges the defendants unlawfully seized her animals, performed an amputation, and prosecuted her for animal cruelty in retaliation for her speech related to the promotion of other animal rights groups, the defense of the criminal allegations against her, and her refusal to cooperate with the investigation of another animal owner.  (See Pl. Fabrikant's Second Am. Compl., Dkt. No. 85, ¶¶ 175, 178.)

For the same reasons as with plaintiff's due process claim, plaintiff's allegations related to the spaying, neutering, and/or amputation performed on one or more of her animals does not give rise to a federal claim under § 1983 because none of those actions were under color of state law.  Although defendants concede that the remaining allegations within Cause of Action Nine, i.e., the execution of the search warrant, the seizure of plaintiff's animals, and the filing of criminal charges, were state actions, the underlying motive for their conduct may not be called into question if there was probable cause to search plaintiff's

home, arrest her, and prosecute her for animal cruelty.  See Singer v. Fulton County Sheriff, 63 F.3d 110, 120 (2d Cir. 1995) (citing Mozzochi v. Borden, 959 F.2d 1174, 1179-80 (2d Cir. 1992)).  Having denied plaintiff's suppression motion in state court, Judge Babcock already determined that the search warrant was supported by probable cause, and plaintiff is barred from relitigating this issue while prosecuting her federal constitutional claims under § 1983 in federal court.  See Allen v. McCurry, 449 U.S. 90, 104, 101 S. Ct. 411, 420 (1980) ("There is, in short, no reason to believe that Congress intended to provide a person claiming a federal right an unrestricted opportunity to relitigate an issue already decided in state court simply because the issue arose in a state proceeding in which he would rather not have been engaged at all.").  Additionally, as already discussed in consideration of plaintiff's malicious prosecution claims, there was probable cause to arrest plaintiff in light of the animals' living conditions reflected by the video recording and photographs of her home on the day the search warrant was executed.  Finally, plaintiff offers no opposition to defendants' argument with respect to her free speech claim despite being granted permission to submit a memorandum of law in excess of the traditional twenty-five pages afforded litigants under N.D.N.Y. Local Rule 7.1(c).  (See Order, Dkt. No. 174.[2])  For all of these reasons, defendants' motion for summary judgment of plaintiff's free speech claim will be granted, and Cause of Action Nine will be dismissed.

---

[2] Although plaintiff sought and was granted permission to file a fifty page memorandum of law, her brief totaled thirty-seven pages and failed to address defendants' arguments with respect to her ninth cause of action.

### 4. Unreasonable Search and Seizure Claim

Plaintiff also asserts that defendants Nace, DeRidder, Spinato, Sasse, and Palmer-Wemp violated her Fourth Amendment right to be free from unreasonable searches and seizures when they executed the search warrant for her home and arrested her on March 2, 2002 (Cause of Action Ten). For the same reasons that plaintiff is estopped from relitigating the probable cause issue with respect to her First Amendment claim, she is also prevented from disturbing the state court's determination that the search warrant was supported by probable cause. See Allen, 449 U.S. at 104, 101 S. Ct. at 420. Additionally, the determination that defendants had probable cause to arrest her is fatal to her claim for false arrest. Therefore, defendants' motion for summary judgment of plaintiff's Fourth Amendment claim will be granted, and Cause of Action Ten will be dismissed.

### B. The Remaining State Law Claims

In light of the decision to dismiss the federal causes of action, the exercise of supplemental jurisdiction over plaintiff's remaining state law claims (Causes of Action One, Three, Eleven, Twelve, Thirteen and Fourteen) and the state law libel claim filed by both plaintiff and Mr. Schindler (Cause of Action Seven) is declined.

## IV. CONCLUSION

Summary judgment of plaintiff's federal claims is warranted for two separate reasons. First, none of the conduct apart from the application for the search warrant, seizure of plaintiff's animals, and subsequent criminal prosecution occurred under color of state law. Although the UCSPCA and its employees are infused with some level of authority under New York law, the relevant statutes did not authorize the spaying, neutering, and/or amputation of any of plaintiff's animals. Instead, these actions occurred under the discretion of the

UCSPCA and its employees, and therefore, cannot form the basis of plaintiff's § 1983 claims. Second, the existence of probable cause insulates the defendants from liability for their decisions to seize plaintiff's animals, arrest her, and commence criminal proceedings.  Even though plaintiff raises an issue of fact as to whether some of the defendants made false statements to investigators, the video recording and photographs of her home demonstrate that the defendants had probable cause to believe she had violated New York's Agriculture and Markets Law.

Accordingly, it is

ORDERED that

(1) Defendants' motion for summary judgment of the federal claims asserted under Causes of Action Two, Four, Five, Six, Eight, Nine, and Ten is GRANTED and these claims are DISMISSED with prejudice;

(2) Defendants' motion for summary judgment of the state law claims asserted under Causes of Action One, Three, Seven, Eleven, Twelve, Thirteen, and Fourteen is GRANTED and these claims are DISMISSED without prejudice to allow plaintiffs to re-plead such claims in the appropriate state court; and

(3) The Clerk of the Court is directed to enter a judgment accordingly.

IT IS SO ORDERED.

_____
United States District Judge

Dated: July 13, 2010
       Utica, New York